AO 106 (Rev 04/10) Application for a Search Warrant (requesting AUSA José R Arteaga)

# UNITED STATES DISTRICT COURT

### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. ˙ 20 - 306M |
| Information associated with Apple iPhone cellular device | ) |
| Model A1633, assigned with (646) 897-4012 that is in the | ) |
| care, custody or control of the FBI, Philadelphia Division | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*

### See Attached Affidavit

located in the    EASTERN    District of    PENNSYLVANIA    , there is now concealed *(identify the person or describe the property to be seized)*:

Information associated with Apple iPhone cellular device Model A1633, assigned with (646) 897-4012 that is in the care, custody or control of the FBI, Philadelphia Division

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a); | attempted armed robbery which interfered with interstate commerce, using, carrying |
| 18 U.S.C. § 924(c)(1) | and brandishing of a firearm during in relation to a crime of violence. |

The application is based on these facts:

### See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of    days (give exact ending date if more than 30 days:    ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant s signature*

FAITH E. GREENAWALT, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2-27-20

*Judge's signature*

City and state:  PHILADELPHIA, PENNSYLVANIA

HONORABLE THOMAS J. RUETER, U.S.M.J
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF
BLACK APPLE IPHONE 6S, MODEL
A1633, IMEI 353255079143106,                    MAGISTRATE NO.    20-306M
CURRENTLY LOCATED AT THE FBI
PHILADELPHIA DIVISION AND
ASSIGNED EVIDENCE ITEM NUMBER
1B151

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER FED.R.CRIM.PROC. 41 FOR A WARRANT TO SEARCH

I, Faith E. Greenawalt, being duly sworn, hereby depose and state the following:

### A. INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—which is currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to

the Philadelphia, Pennsylvania Division, and have been so since July 2013. I am currently

assigned to the Violent Crimes Task Force ("VCTF") which investigates violations of Federal

law, to include robberies of banks, robberies of businesses that affect interstate commerce (also

known as Hobbs Act robberies), kidnappings, and fugitives. Previously, I was assigned to the

Counterintelligence squad where I investigated Counter Proliferation, among other violations.  I

am familiar with federal search warrants and seizing evidence in accordance with the probable

cause set forth in the affidavits. I have authored and executed federal search warrants in the past.

3.      The information contained in this affidavit is based upon my personal knowledge,

experience, and investigation, as well as information related to me directly or through reports of

other FBI agents, FBI task force officers, Philadelphia Police Department ("PPD") officers, and other law enforcement officers in the course of their official duties.

4.     Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included all information known by me or other agents concerning this investigation. I have set forth only those facts I believe are essential to establish the necessary foundation for the search warrant. This affidavit does not exhaust my knowledge, or that of other agents, of the facts and circumstances surrounding this investigation.

## B.  **IDENTIFICATION OF THE DEVICES TO BE SEARCHED**

5.     This affidavit is being submitted in support of an application for a search warrant for the following (hereinafter as the "Subject Telephone") cell phone of TYREE HOLMES.

    a.     A black Apple iPhone 6s, model A1633, IMEI 353255079143106, currently
           located at the FBI Philadelphia Division and assigned evidence item number
           1B151 within FBI case file 192C-PH-3147066, which was seized from
           HOLMES' person.

6.     Through the course of this investigation, HOLMES has been identified as committing an attempted armed armored car robbery, in violation of 18 U.S.C. §§ 1951(a) (attempted robbery which interferes with interstate commerce), 18 U.S.C. §§ 924(c)(1) (using, carrying, and brandishing a firearm during and in relation to a crime of violence), and 18 U.S.C. §§ 2 (aiding and abetting).

7.     The item to be seized pursuant to the search warrant is more fully described in Attachment B.

### C. **PROBABLE CAUSE**

8.     This is an investigation into an attempted armed robbery of an armored truck, in violation of 18 U.S.C. § 1951, 18 U.S.C. § 924(c), and 18 U.S.C. § 2.  The robbery occurred on August 1, 2019.  As discussed below, there is probable cause to believe that one of the suspects is TYREE HOLMES.

9.     On August 1, 2019, at approximately 10:01 a.m., two unidentified males, ("SUSPECT #1" and "SUSPECT #2"), and an unidentified driver, ("SUSPECT #3), attempted to rob a Gardaworld armored car ("armored car"), at 3535 Market Street, Philadelphia, Pennsylvania, by point of semi-automatic assault rifle and semi-automatic handgun.

10.     The driver of the armored car, E.W. ("VICTIM #1"), exited the armored car through the side messenger door.  VICTIM #1's partner and fellow Gardaworld employee, R.W. ("VICTIM #2"), handed VICTIM #1 three carrier bags.  VICTIM #1 held two of the carrier bags, which were bundled together, in one hand, and the third bag in the opposite hand.  The first bag contained approximately $176,000 in cash, the second bag contained approximately $157,000 in cash, and the third bag contained approximately $101,000 in cash, for a total of $434,000 in cash.

11.     VICTIM #1 turned around and walked up the front steps of the building with the bags.  SUSPECT #1 then ran up the stairs to the right of VICTIM #1 carrying an assault rifle with a black and red strap.  SUSPECT #1 yelled at VICTIM #1, "Give it up!"  SUSPECT #2 then ran up the stairs behind SUSPECT #1 carrying a black Glock 17 handgun.

12.     VICTIM #1 immediately dropped the bags he was carrying and took two steps backwards.  SUSPECT #2 picked up the bags (one bundled bag and the other single bag).

3

SUSPECT #1 and SUSPECT #2 then attempted to run down the same set of stairs traveling in the direction they came.

13.     As SUSPECT #1 fled down the stairs, SUSPECT #1 dropped a drum style magazine from his assault rifle onto the sidewalk. SUSPECT #1 then entered the passenger side front seat of a burgundy Chevrolet Trailblazer, Pennsylvania license plate number JPB-6437, VIN: 1GNDT13S362237386, ("suspect vehicle"). The suspect vehicle was parked directly behind a Nissan Altima which was parked directly behind the armored car on the east side of 36th Street (3535 Market Street). As SUSPECT #1 entered the suspect vehicle, VICTIM #1 and VICTIM #2 fired their weapons at SUSPECT #1 and the suspect vehicle. SUSPECT #3, the driver of the suspect vehicle, then reversed the suspect vehicle, put the suspect vehicle in drive, and drove northbound on 36th Street.

14.     As SUSPECT #2 simultaneously fled down the stairs, SUSPECT #2 dropped one bag of money and the black Glock 17 semi-automatic handgun onto the ground. SUSPECT #2 continued to run southbound on 36th Street and turned left heading eastbound on Market Street, where SUSPECT #2 dropped the remaining bags of money. As SUSPECT #2 fled southbound down 36th Street, VICTIM #1 and VICTIM #2 also fired their weapons at SUSPECT #2.

15.     SUSPECT #1 was described as a black male, approximately 5'8" to 5'10" in height, stocky build, wearing a black full-faced ski mask, black shirt, and black pants. The weapon carried by SUSPECT #1 was described as an assault rifle with a handguard with air vents around the receiver. The rifle was attached to a red and black strap that SUSPECT #1 had around his shoulder. The assault rifle also had a drum style magazine full of ammunition.

16.     SUSPECT #2 was described as a black male, approximately 6'0" to 6'2" in height, slender build, wearing a black full-faced mask, black long sleeved hooded sweatshirt or

4

long sleeved shirt, with a white undershirt, black pants, and black sneakers with white soles. The handgun carried by SUSPECT #2 was described as a black Glock 17 semi-automatic handgun.

17.     SUSPECT #3 was not physically seen by VICTIM #1 and VICTIM #2 but was described as an individual of unknown race and unknown gender.

18.     After the attempted robbery, Philadelphia Police Department, University of Pennsylvania Police Department, Drexel University Police Department, SEPTA Police Department, AMTRAK Police Department, and members of the Federal Bureau of Investigation, Philadelphia Division Violent Crimes Task Force, responded to the crime scene for processing and investigation.

19.     Once on scene, multiple witnesses and VICTIM #1 and VICTIM #2 were interviewed. Video surveillance footage was also obtained from multiple locations, and evidence was collected from four separate locations.

20.     At approximately 11:29 a.m., I recovered the following items from Daniel Quigley, Badge #65, Drexel Police Department, at 208 North 35th Street, Philadelphia, Pennsylvania: One black Under Armour face mask and two clear latex gloves. These items are believed to be items dropped by SUSPECT #2 as he fled the scene. This is based on recovered video surveillance provided by Drexel Police Department that shows SUSPECT #2 running northbound on the west side of 35th Street as SUSPECT #2 is about to cross over the intersection at 35th and Powelton Avenue. These items were documented on an FBI property receipt and are currently being held at PPD's Forensic Laboratory where they are preserved for DNA comparison.

21.     At approximately 11:30 a.m., the FBI Evidence Response Team responded to 3535 Market Street to process and recover evidence. The evidence most notably recovered from

5

the crime scene were: (1) a loaded black Glock 17 semi-automatic handgun, serial number

PEY429; (2) approximately $434,000 in cash dropped by SUSPECT #2; and (3) a drum-style

magazine loaded with ammunition dropped by SUSPECT #1. The loaded Glock 17 semi-

automatic handgun and the drum-style magazine were transported to FBI Philadelphia and

transferred into the custody of Philadelphia Police Department's Forensic Laboratory and

preserved for DNA comparison. The cash was transported to Wilmington, Delaware, where the

money was counted and returned to the custody of Gardaworld

22.     At approximately 11:41 a.m., I recovered the following items from Sergeant

Gregg, Badge #50, Drexel Police Department, at 300 North 35th Street, Philadelphia,

Pennsylvania: (1) one black holster; and (2) one black nylon glove with plastic fingertips and

blue stitching at the wrist. These items are believed to be items dropped by SUSPECT #2 as he

fled the scene. This is based on recovered video surveillance provided by Drexel Police

Department that shows SUSPECT #2 running away and getting into a blue GMC Terrain at 35th

and Pearl Street. These items were documented on an FBI property receipt and turned over to

PPD's Forensic Laboratory where they were preserved for DNA comparison.

23.     At approximately 12:08 p.m., I recovered the following items from Police Officer

Kathy Lewis, Badge #2405, Payroll 197726, PPD, at 3614 Pearl Street, Philadelphia,

Pennsylvania: (1) one black cloth sack recovered from the sidewalk; and (2) a 2006 burgundy

Chevrolet Trailblazer, Pennsylvania Tag JPB-6437, VIN: 1GNDT13S362237386. At the time of

the recovery, the Chevrolet Trailblazer matched the description of the vehicle and had gunshot

damage visible from the outside of the vehicle. The Chevrolet Trailblazer was transported to the

PPD Auto Squad while investigators sought a federal search warrant.

24. Database checks conducted on the license plate for the Chevrolet Trailblazer identified the registered owner as ANTHONY WALLACE.

25. Special Agent Cook obtained video surveillance footage from Drexel University for the surrounding area, to include the area of 3405 Pearl Street. The surveillance footage specifically showed a blue GMC Terrain, North Carolina Tag of PEN-2357, driven by an unknown black individual. The GMC Terrain had damage to the front passenger door and a string of beads hanging from the rearview mirror. Additional footage obtained from video surveillance showed an unknown black male, believed to be TYREE HOLMES, running northbound on the 300 block of 35th Street, and entering the GMC Terrain at 35th and Pearl Street.

26. On August 5, 2019, surveillance footage from the August 1, 2019, attempted armed robbery at 3535 Market Street and surveillance photographs of SUSPECT #2 fleeing from the scene were submitted to media outlets to solicit tips from the public. Specifically, three surveillance photographs were submitted to media outlets, including YouTube, showing SUSPECT #2 at different angles.

27. On August 6, 2019, a federal search warrant was obtained for the Chevrolet Trailblazer.

28. On August 8, 2019, a search was conducted of the Chevrolet Trailblazer. Recovered from the Chevrolet Trailblazer was a black Motorola handheld radio. The hand held radio was recovered from the center console and determined to be a Motorola CP200XLS, Serial CPX3009, affixed with a white label of "BRULEE 11" on the front. The radio was submitted to PPD's Forensic Laboratory for fingerprint and DNA analysis.

7

29.     On August 8, 2019, at approximately 9:31 a.m., I received a tip from PPD Police

Officer Dennis Lippert, Badge #4924. Officer Lippert watched the media release for the August

1, 2019, attempted armed robbery and believed the individual fleeing the attempted armed

robbery was TYREE HOLMES.

30.     On August 8, 2019, at approximately 4:55 p.m., PPD Police Officer Mikal Carr,

Badge #1250, contacted Detective Carey in reference to the footage submitted to media outlets.

Officer Carr told Detective Carey that the individual depicted in the YouTube video was TYREE

HOLMES. Officer Carr told Detective Carey that he initially could not recall TYREE HOLMES'

name but immediately recognized his face. Officer Carr then used the Philadelphia Police

Department Mugshot Imager and learned that the male's name is TYREE HOLMES. Officer

Carr stated he had five or six encounters with TYREE HOLMES in the last two years in the area

of 3400 Wallace Street and 600 Shedwick Street, Philadelphia, Pennsylvania.

31.     On August 14, 2019, investigators conducted an open source check for the

Motorola CP200XLS, Serial CPX3009, affixed with a white label of "BRULEE 11," recovered

from the search of the Chevrolet Trailblazer on August 8, 2019. The search identified the hand

held radio as property of Brulee Catering, located inside The Met Philadelphia, 858 North Broad

Street, Philadelphia, Pennsylvania. Investigators called and spoke to an employee of Brulee

Catering ("EMPLOYEE #1"), who confirmed that the hand held radio belonged to Brulee

Catering and was last signed out by TYREE HOLMES and was never returned.

32.     On August 15, 2019, I interviewed EMPLOYEE #1. EMPLOYEE #1 was shown

a driver's license photograph of TYREE HOLMES. After reviewing the photograph,

EMPLOYEE #1 stated, "That's our guy. That's Tyree."

8

33. EMPLOYEE #1 provided a copy of TYREE HOLMES' work schedule. The work schedule showed TYREE HOLMES punched in his code for work at approximately 10:46 a.m., on August 1, 2019. Additionally, TYREE HOLMES was scheduled to work on August 7, 2019, but did not come into work that day. TYREE HOLMES has not been in contact with any employees of Brulee Catering since August 6, 2019.

34. EMPLOYEE #1 said that up until August 1, 2019, TYREE HOLMES had long dreadlocks; however, sometime between August 4, 2019, and August 6, 2019, TYREE HOLMES cut his hair to about shoulder length and came to work with shorter dreadlocks.

35. EMPLOYEE #1 was then shown a surveillance photograph from the August 1, 2019, attempted armed robbery at 3535 Market Street, Philadelphia, Pennsylvania. After reviewing the surveillance photograph EMPLOYEE #1 said, "I'm 130% positive that's Tyree. I recognize the pants. He wears the sweat pants sometimes in here (work)."

36. EMPLOYEE #1 was shown a second surveillance photograph from the August 1, 2019, armored car attempted robbery at 3535 Market Street, Philadelphia, Pennsylvania. After reviewing the surveillance photograph, EMPLOYEE #1 said, "That's the length of his (TYREE HOLMES) dreads before he cut them."

37. On August 15, 2019, I also interviewed EMPLOYEE #2. EMPLOYEE #2 was shown a driver's license photograph of TYREE HOLMES. After reviewing the photograph, EMPLOYEE #2 said, "Yes, that's the individual I know as Tyree Holmes."

38. EMPLOYEE #2 was shown a surveillance photograph from the August 1, 2019 armored car attempted robbery at 3535 Market Street, Philadelphia, Pennsylvania. After reviewing the surveillance photograph EMPLOYEE #2 said, "This could be Tyree. Side profile.

9

The way he looks. The build is absolutely similar. The facial features, beard, look similar. It appears to be Tyree. The nose looks familiar. The facial features."

39. EMPLOYEE #2 was shown a second surveillance photograph from the August 1, 2019, attempted armed robbery at 3535 Market Street, Philadelphia, Pennsylvania. After reviewing the surveillance photograph, EMPLOYEE #2 said, "The photo is blurry. I'm more sure that it is him (Tyree) than it's not him. It appears to be Tyree."

40. On August 15, 2019, I also interviewed EMPLOYEE #3. EMPLOYEE #3 was shown a driver's license photograph of TYREE HOLMES. After reviewing the photograph, EMPLOYEE #3 said, "This is Tyree."

41. EMPLOYEE #3 worked with TYREE HOLMES every day. EMPLOYEE #3 last saw TYREE HOLMES on August 6, 2019. EMPLOYEE #3 last spoke to TYREE HOLMES via text on August 6, 2019. EMPLOYEE #3 provided TYREE HOLMES' cellular telephone number as 717-247-4899. TYREE HOLMES had two cellular telephones but EMPLOYEE #3 only had the number associated with the one phone TYREE HOLMES used for work purposes.

42. EMPLOYEE #3 was shown a surveillance photograph from the August 1, 2019, attempted armed robbery at 3535 Market Street, Philadelphia, Pennsylvania. After reviewing the surveillance photograph EMPLOYEE #3 said, "Looks like Tyree. His face and his hair."

43. On August 15, 2019, I requested subscriber and call detail records from VERIZON WIRELESS for 717-247-4899, for the time period of June 1, 2019, to present, via grand jury subpoena.

44. On August 17, 2019, a tip was received by the FBI National Threat Operations Center ("NTOC"). The tipster, D.P., identified the individual depicted in the media release as TYREE HOLMES.

10

45. On August 19, 2019, a second tip was received by the NTOC. The tipster, C.L., identified the individual depicted in the media release as TYREE HOLMES. C.L. said TYREE HOLMES was employed at "The Met on Broad Street in Philadelphia; however, HOLMES "disappeared" two weeks ago, and has not returned to work." C.L. provided TYREE HOLMES' cellular telephone number as 717-247-4899.

46. On August 21, 2019, I interviewed an additional employee of Brulee Catering, EMPLOYEE #4. EMPLOYEE #4 was shown a driver's license photograph of TYREE HOLMES. After reviewing the photograph, EMPLOYEE #4 said, "Yup, that's Tyree."

47. EMPLOYEE #4 was also shown a surveillance photograph from the August 1, 2019, attempted robbery at 3535 Market Street, Philadelphia, Pennsylvania. After reviewing the photograph, EMPLOYEE #4 said, "Looks like his (HOLMES) frame. Eyes sort of look indented more than Tyree but the facial features resemble Tyree."

48. EMPLOYEE #4 provided TYREE HOLMES' cellular telephone number as 717-247-4899.

49. Investigators know that on February 11, 2019, and August 17, 2019, TYREE HOLMES was stopped by police in a blue 2015 GMC Terrain, Pennsylvania Tag KSM-4078, VIN: 2GKALMEK5F6182411.

50. On September 11, 2019, Detective Carey conducted a Vehicle/Pedestrian Report search for Pennsylvania Tag KSM-4078 (GMC Terrain) through the Philadelphia Police Department 48A system. The search results identified a blue 2015 GMC Terrain, Pennsylvania License Plate KSM-4078, VIN: 2GKALMEK5F6182411, was seized by Philadelphia Police Department and impounded by Philadelphia Parking Authority on September 10, 2019.

11

51.    Detective Carey and Special Agent Faith E. Greenawalt traveled to Philadelphia Parking Authority ("PPA"), 2501 Weccacoe Avenue, Lot #1, Philadelphia, Pennsylvania, where the vehicle was impounded. The vehicle was observed and photographed in the PPA lot. The impounded vehicle was identified as a blue 2015 GMC Terrain, Pennsylvania Tag KSM-4078, VIN: 2GKALMEK5F6182411.

52.    While observing the vehicle, I observed a string of blue beads hanging from the rearview mirror and obvious damage to the front passenger door.

53.    I then compared the blue 2015 GMC Terrain, Pennsylvania Tag KSM-4078, VIN: 2GKALMEK5F6182411, located in the impound lot, to the surveillance photographs obtained of the GMC Terrain in the area of Pearl Street on August 1, 2019, as SUSPECT #2 (TYREE HOLMES) fled from the attempted armed robbery. The string of beads hanging from the rearview mirror and the damage to the front passenger door are consistent with both vehicles.

54.    The vehicle was then placed in Philadelphia Police Department custody by Detective Carey. The vehicle was then transported to PPD Auto Squad, 4298 MaCalester Street, Philadelphia, Pennsylvania, 19120, by a PPA tow truck, until a search warrant could be obtained.

55.    On September 11, 2019, Detective Carey interviewed Philadelphia Police Department Officer Steve Leach at Philadelphia FBI, 600 Arch Street, 8th Floor, Philadelphia, Pennsylvania 19106, regarding the September 10, 2019, stop and impound of the blue 2015 GMC Terrain, VIN: 2GKALMEK5F6182411. Officer Leach was shown a photograph of TYREE HOLMES and identified him as the driver of the vehicle at the time of the stop. Officer Leach was also shown a photograph of GLADISHA ECHEVARRIA. Officer Leach identified GLADISHA ECHEVARRIA as the black female who showed up during the stop and identified herself as the owner of the blue 2015 GMC Terrain, VIN: 2GKALMEK5F6182411.

12

56.     On September 17, 2019, Detective Matthew Carey and I interviewed GLADISHA ECHEVARRIA at FBI Philadelphia, 600 Arch Street, 8th Floor, Philadelphia, PA. The interview of ECHEVARRIA was visually and audibly recorded. ECHEVARRIA identified herself as the owner of the blue GMC Terrain, Pennsylvania tag number KSM-4078, VIN: 2GKALMEK5F6182411.

57.     ECHEVARRIA was shown a photograph of the blue GMC Terrain, Pennsylvania tag number KSM-4078, VIN: 2GKALMEK5F6182411, recovered by Detective Carey and I on September 11, 2019. ECHEVARRIA identified the vehicle in the photograph as the vehicle she owns.

58.     ECHEVARRIA was then shown three surveillance photographs of the GMC Terrain pulled from video surveillance footage obtained in the area of 3405 Pearl Street, Philadelphia, Pennsylvania, on August 1, 2019.

59.     The first surveillance photograph was a photograph of the GMC Terrain showing the front windshield and the passenger side of the vehicle. After reviewing the photograph, ECHEVARRIA stated the vehicle in the photograph had damage to the passenger side of the vehicle that was consistent with the damage to ECHEVARRIA's GMC Terrain. ECHEVARRIA also said she could see the blue "vicca" beads hanging from the rear view mirror of the vehicle in the photograph which are the same blue "vicca" beads hanging from the rear view mirror of her GMC Terrain. ECHEVARRIA signed and dated the photograph identifying the vehicle in the surveillance photograph as the same vehicle she owns.

60.     The second surveillance photograph ECHEVARRIA was shown depicted the rear end of a GMC Terrain, bearing a North Carolina tag. ECHEVARRIA circled the license plate and wrote, "My car. Wrong plates." ECHEVARRIA told investigators she had never seen the

13

North Carolina license plate before and did not know where it came from. ECHEVARRIA signed and dated the second surveillance photograph of the GMC Terrain.

61.     The third surveillance photograph ECHEVARRIA was shown depicted the driver's side of the GMC Terrain. ECHEVARRIA identified the vehicle in the surveillance photograph as, "My car." ECHEVARRIA signed and dated the surveillance photograph.

62.     ECHEVARRIA was shown a Pennsylvania driver's license of TYREE HOLMES. ECHEVARRIA identified the individual depicted in the driver's license photograph as her brother, TYREE HOLMES, but said TYREE HOLMES had since cut his dreadlocks to a short hairstyle.

63.     ECHEVARRIA was shown a surveillance photograph from the August 1, 2019, attempted armed robbery at 3535 Market Street, Philadelphia, Pennsylvania. The surveillance photograph depicted a black male at 35th and Powelton Avenue, Philadelphia, Pennsylvania, which was released to the media. ECHEVARRIA reviewed the surveillance photograph and said, "Looks like Tyree L. Holmes, which is my only brother." ECHEVARRIA signed and dated the surveillance photograph.

64.     At the conclusion of the interview, ECHEVARRIA provided investigators written and verbal consent for the search of her Apple iPhone 6, cellular telephone 267-844-2848, and her blue 2015 GMC Terrain, Pennsylvania Tag KSM-4078, VIN: 2GKALMEK5F6182411.

65.     On September 17, 2019, a consent search of the blue 2015 GMC Terrain, Pennsylvania Tag KSM-4078, VIN: 2GKALMEK5F6182411 was conducted in the presence of ECHEVARRIA. One item of note recovered from the vehicle was a string of blue "vicca" beads handing from the rearview mirror. The vehicle was then released into the custody of ECHEVARRIA.

14

66.     Investigators conducted database checks for TYREE HOLMES, to include a criminal history, prior arrests, driver's license check, and vehicle check.

67.     Investigators compared the driver's license photograph of HOLMES with that of the surveillance photographs from the August 1, 2019, attempted armed robbery of Gardaworld armored car, located at 3535 Market Street, Philadelphia, Pennsylvania. Investigators believe the individual depicted in the surveillance photographs of SUSPECT #2 fleeing from the attempted armed robbery appear to be TYREE HOLMES.

68.     I compared the physical appearance and description of HOLMES with that of the physical description provided by victims and witnesses. Investigators believe HOLMES fits the physical descriptions provided by the victims and witnesses that were interviewed.

69.     On September 30, 2019, a federal criminal complaint and arrest warrant (19-1652-M) was issued by the Honorable Carol Sandra Moore Wells, United States Magistrate Judge for the Eastern District of Pennsylvania, for TYREE HOLMES for the previously mentioned violations.

70.     From September 30, 2019, until TYREE HOLMES was arrested on February 18, 2020, investigators made several attempts to locate HOLMES. Based on my training and experience, I believe it would have been very unlikely for HOLMES to have been unaware that he was a wanted fugitive. For example: (a) agents interviewed family members and friends of HOLMES, including his sister, who provided consent to search the car that HOLMES used during the robbery; (b) agents conducted physical surveillance of addresses known to be associated with HOLMES; (c) beginning on December 11, 2019, the FBI featured TYREE HOLMES on an electronic billboard in the Philadelphia region as a Wanted Fugitive; and (d) on December 16, 2019, and February 10, 2020, TYREE HOLMES was featured in the Philadelphia

15

Daily News as the "Week's Most Wanted" for failure to appear in court and for theft.[1] Evidence of TYREE HOLMES' flight to avoid prosecution when he was a known fugitive may be evidence of his consciousness of guilt. Indeed, when HOLMES was finally arrested, he provided officers a fake name and date of birth (discussed below).[2]

71.    On February 18, 2020, at approximately 8:02 p.m., 19th District Philadelphia Police Department Police Officer Timothy Sedler, Badge# 7552, and Officer Terone Travis, Badge# 9612, conducted a traffic stop at 5900 Arch Street, Philadelphia, PA, on a black 2016 Sonata Hyundai, Pennsylvania plate KYM2079. The driver of the vehicle identified himself as Trevor Holmes and provided his date of birth as 02/12/1992. The driver was fingerprinted at the scene with a PPD MFID scanner and identified as TYREE HOLMES, date of birth 01/24/1992. TYREE HOLMES was placed under arrest for a local bench warrant. TYREE HOLMES was transported by Officers Sedler and Travis to Southwest Detectives located at 5510 Pine Street, Philadelphia, PA.

72.    On February 19, 2020, at approximately 10:06 a.m., Special Agent Faith E. Greenawalt and Detective Matthew Carey traveled to Southwest Detectives, located at 5510 Pine Street, Philadelphia, PA, where HOLMES was being held on local charges. Upon arrival, HOLMES was placed under arrest for the August 1, 2019, attempted armed robbery of Gardaworld at 3535 Market Street, Philadelphia, PA.

73.    At the time of TYREE HOLMES' arrest, SA Greenawalt seized the following item from TYREE HOLMES: one black Apple iPhone 6s, Model A1633, IMEI

---

[1] The Philadelphia Daily News features focused on the failure to appear and theft warrants because, at the time, the attempted armed robbery arrest warrant was under seal.

[2] After his arrest, HOLMES told agents that he knew he was wanted for the failure to appear warrant, but claimed he did not know he was wanted for the attempted armed robbery.

16

353255079143106. TYREE HOLMES verbally provided SA Greenawalt and Detective Carey the telephone number associated with the phone as the Subject Telephone (646-897-4012). TYREE HOLMES did not provide the passcode to access the iPhone 6s.

74. As discussed above, the evidence shows that during the time period of the August 1, 2019 attempted armed robbery, TYREE HOLMES was known to utilize more than one cellular telephone. One of those phones was described as having telephone number 717-247-4899. Agents obtained records for that phone number, which indicate the number was assigned to an iPhone 8 with IMEI 356082094049515. The Subject Telephone is an Apple iPhone 6s and has a different IMEI; however, I believe the Subject Telephone recovered on TYREE HOLMES' person at the time of his arrest may contain evidence regarding the attempted armed robbery. I know from my training and experience that people engaged in criminal conduct often use more than one phone at the same time. Furthermore, even if HOLMES acquired the Subject Telephone after the attempted armed robbery, there is probable cause to believe that evidence will be located in the Subject Telephone. Based on my training and experience, I know that items that were originally stored on one phone can be transferred to another phone (including, but not limited to text messages, photographs and videos, contacts and note files). Fugitives often communicate with co-conspirators and associates regarding their fugitive status and law enforcement's attempts to locate them, and sometimes will attempt to conduct research on the investigation (such as by performing internet searches for news articles about the crime).

75. Additionally, HOLMES' actions while a fugitive may also be evidence of his involvement in the attempted armed robbery. For example: (a) TYREE HOLMES stopped reporting to work on August 7, 2019, two days after the August 5, 2019, media release of

SUSPECT #2's involvement in the armored car robbery[3]; (b) TYREE HOLMES stopped communicating with certain friends, family, and co-workers on the telephone number known to law enforcement; (c) TYREE HOLMES changed his cellular telephone known to friends, family, and co-workers[4]; and (d) TYREE HOLMES changed his appearance by shaving his head after growing his waist long dreadlocks since 2013. Based on my training and experience, I know that individuals who abruptly change multiple aspects of their lives at one time, including their work status, physical appearance, and contact with friends and family, are acting so because of a guilty conscious and are specifically changing their normal routines and contacts to avoid detection by law enforcement.

76.     Investigators know there were multiple individuals involved in the attempted armed robbery. The other individuals involved in this crime are currently at large and pose a serious threat to the Philadelphia community. Information believed to be contained in the Subject Telephone could provide investigators with evidence against TYREE HOLMES' co-conspirators and the identity of the additional co-conspirators through text messages, contacts, photographs, notes, emails, and other electronic communications/information stored on the device.

77.     The Subject Telephone is currently in storage at the FBI Philadelphia Division stored in a manner in which its contents are in substantially the same state as they were when the Subject Telephone first came into the possession of the FBI.

---

[3] According to Brulee Catering employment records, TYREE HOLMES was hired by Brulee Catering on March 14, 2019.

[4] According to Verizon Wireless returns for 717-247-4899, TYREE HOLMES had that number since February 27, 2019.

18

## D. **TECHNICAL TERMS**

78. The Subject Telephone is a wireless telephone. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing-back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

79. Based on my training, experience, and research, I know that the Subject Telephone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## E. **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

80. Based on my training and experience, I know that electronic devices such as cell phones can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensic tools. Similarly, things that have

19

been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

81. Furthermore, based on my training and experience, I know that people who engage in robberies will often communicate with their coconspirators and/or accomplices by way of cellular telephone (including via text message) before, during, and after the commission of a robbery. Further, I am aware that people who engage in robberies will often use the Internet (including on their cell phones) to search for information about their intended victims, such as the locations and hours of businesses. Further, I am aware that people who engage in robberies often possess photographs (including in their phones) of themselves and their coconspirators/accomplices; the victims of their robberies; clothing worn during the robberies; weapons and other items used during the robberies; the proceeds of their robberies; and items purchased with the proceeds of the robberies. I also know from my training and experience that criminals, including those who engage in robberies, often have multiple phones to facilitate their commission of illegal activities while attempting to thwart identification by law enforcement through the use of multiple phones or "burner" phones which cannot be traced back to an individual. HOLMES has changed his cellular telephone and/or telephone number multiple times since the armored car robbery took place on August 1, 2019.

82. Evidence of calls and text messages made by, to, and among the members of this robbery conspiracy in the course of the events described in this Affidavit are expected to be disclosed by the requested searches. Among other reasons cited herein, searches of the Subject Telephone are required to determine the telephone number assigned to the device, thus enabling their identification as the phones used by the members of this conspiracy. Also, by analyzing

call activity, agents may be able to determine where other accomplices were in the area, and if there were communications between accomplices during the commission of the crime.

83.     This application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file);

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence;

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when;

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and

21

the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant; and

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

84. Searching for the evidence described in Attachment B to the Subject Telephone search warrant may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, and consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the warrant I am applying for would permit the examination of the device using whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

22

85.    Based on the foregoing, I believe that probable cause exists to believe that

TYREE HOLMES committed violations of 18 U.S.C. §§ 1951(a) (attempted robbery which

interferes with interstate commerce), 18 U.S.C. §§ 924(c)(1) (using, carrying, and brandishing a

firearm during and in relation to a crime of violence, and 18 U.S.C. §§ 2 (aiding and abetting).


FAITH E. GREENAWALT
*Special Agent*
*Federal Bureau of Investigation*

Sworn and Subscribed to before me

This 27th day of February , 2020


HONORABLE THOMAS J. RUETER
*United States Magistrate Judge*
*Eastern District of Pennsylvania*

23

## **ATTACHMENT A**

The property to be searched is:

a.      A black iPhone 6s, model A1633, IMEI 353255079143106, currently located at the FBI Philadelphia Division and assigned evidence item number 1B151 within FBI case file 192C-PH-3147066, which was retrieved off of HOLMES' person.

This warrant authorizes the forensic examination of the Subject Telephone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Subject Telephone described in Attachment A that relate to violations of Title 18 U.S.C. §§ 1951(a) (attempted robbery which interferes with interstate commerce), 18 U.S.C. §§ 924(c)(1) (using, carrying, and brandishing a firearm during and in relation to a crime of violence, and 18 U.S.C. §§ 2 (aiding and abetting) including:

   a.      Documents in electronic form, including correspondence, records, opened or unopened emails, text messages, voicemail messages, call logs, chat logs, internet history, GPS data and map history pertaining to the planning or commission of robberies or shootings; the possession of firearms or ammunition; and the distribution, expenditure or location of proceeds of robberies.

   b.      Photographs relating to the planning or commission of robberies or shootings or the possession of firearms or ammunition, including photographs of TYREE HOLMES and his coconspirators/accomplices; the victims of their robberies; clothing worn during the robberies; weapons and other items used during the robberies; the proceeds of their robberies; items purchased with the proceeds of the robberies; and TYREE HOLMES' activities between the time frame of September 30, 2019 and the day of his arrest on February 19, 2020.

   c.      Address books and calendars.

2.      Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1

3.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form, including:

a.   Forms of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

b.   Data that has been manually programmed into a GPS navigation system, as well as data automatically stored by the GPS navigation system, including any and all electronic data which can be collected, analyzed, created, displayed, converted, stored, concealed, or transmitted, or similar computer impulses or data.

c.   Stored electronic information and communications, including but not limited to, telephone or address directory entries consisting of names, addresses and telephone numbers; logs of telephone numbers dialed, telephone numbers of missed calls, and telephone numbers of incoming calls; schedule entries; stored memoranda; stored text messages; stored photographs; store audio; and stored video.

4.     Evidence and contents of logs and files on the device, such as those generated by the device's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, were opened, were saved, or were deleted. Evidence tending to show the identity of the person using the device at the time any actions relating to the above offenses were taken.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

2

instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.